175 P.2d 438

FRAZIER, Justice of the Peace, et al. v. TERRILL.

No. 4904.

Supreme Court of Arizona.

Dec. 9, 1946.

132

John L. Sullivan, Atty. Gen., John W. Rood, Chief Asst. Atty. Gen., and William P. Mahoney, Jr., Asst. Atty. Gen., for appellants.

W. E. Polley, of Bisbee, for appellee.

LA PRADE, Judge.

The appeal in this case is taken from an order for a peremptory writ of prohibition granted February 15, 1946 by the Superior Court of Cochise County, directing the Justice Court, Precinct Number One, Cochise County, and L. T. Frazier as judge thereof, to refrain from any further proceedings in a criminal case being tried before him in which A. J. Terrill, appellee, was defendant and the state plaintiff.

Appellee, A. J. Terrill, was charged with violating Section 57-126, A.C.A. 1939, as amended by Chapter 52, Laws 1945. The specific charge was for unlawfully having in possession about sixty pounds of deer

meat. Defendant moved to quash the complaint upon the ground that the justice court did not have jurisdiction of the alleged offense. The motion being denied, defendant sought and secured the peremptory writ of prohibition. The judge of the superior court found that the justice court did not have jurisdiction to try the offense punishable under the provisions of Section 57-126, A.C.A. 1939, as amended by Chapter 52, Laws 1945, for the reason that the penalty exceeds that which a justice of the peace is authorized to impose. The applicable portion of said section reads as follows:

"Any person who takes, *possesses,* transports, buys, sells, or offers for sale, any *deer,* wapiti (elk), antelope, beaver, bison (buffalo), mountain sheep, or peccary or javelina, or wild turkey, *or any part of any such animal,* or bird, in violation of this act, * * * shall be guilty of a misdemeanor, and shall be punished by a fine of not less than one hundred dollars nor more than three hundred dollars, or by imprisonment in the county jail for not less than three months nor more than six months, or by both such fine and imprisonment; *and in addition thereto, is liable to an additional penalty of fifty dollars* for each *animal or part thereof,* or fish, or bird, taken, destroyed, *possessed,* transported, bought, sold, or offered for sale in violation of this Act." (Emphasis supplied)

By section 9 of Article 6 of the State Constitution "* * * The powers, duties, and jurisdiction of justices of the peace, shall be provided by law: * * *." The statutory provision conferring jurisdiction on justice courts reads in part as follows:

"Jurisdiction of justices' courts.—The justices' courts have jurisdiction of the following offenses committed within their respective precincts in which such courts are established, subject to the right to change of venue as provided by law:

"1. * * *

"2. * * *

"3. Breaches of the peace, riots, routs, affrays, committing a wilful injury to property, and all misdemeanors punishable by fine not exceeding three hundred dollars ($300), or imprisonment not exceeding six (6) months, or by both such fine and imprisonment." Section 44-3201, A.C.A. 1939.

The sole question before this court is whether as a matter of law the justice court has jurisdiction of the offense charged. Under the ruling of Brookner v. State, 14 Ariz. 546, 132 P. 1136, the following rule as to the jurisdiction of the justice of the peace is announced:

"* * * The test of the jurisdiction of the justice of the peace in this case, as in all others, is whether the maximum penalty that may be imposed upon convictions is greater than he is authorized to inflict. If the penalty may be greater than the maximum that he can impose, then he is without jurisdiction. * * *."

By the provisions of Section 44-3201, supra, the maximum fine that a justice of the peace may assess is $300. By the provisions of the Game Code referred to (Section 57-126, supra), one found guilty of violating this section may be punished by a fine of not more than $300 "And in addition thereto, is liable to an additional penalty of fifty dollars for each animal or part thereof, * * * possessed, * * * in violation of this Act." It is the position of appellants that the additional penalties provided in said section are civil and remedial penalties inuring to the benefit of the state and may not be added to the criminal punishment authorized so as to remove a violation of the section from the jurisdiction of the justice court. To reach this conclusion it is suggested that the legislature in enacting Section 57-126, supra, intended to make this section serve the function that was formerly authorized by separate actions, one criminal and the other civil. Appellants call our attention to the fact that by Section 19 of Chapter 82, Laws 1912, Special Session, it was provided that the state game warden might bring a civil action in the name of the state to recover damages against any person unlawfully having in possession certain named game animals. This remedy was no bar to any criminal prosecution for taking or having in possession the same game. This section of the 1912 act was carried forward as paragraph 668 of the 1913 Penal Code and as Section 1542 of the 1928 Code. The unlawful possession of game was a criminal offense under the 1913 Code and also under the 1928 Code (Section 1553). By Chapter 84, Laws 1929, the legislature enacted a new and revised code relating to game and fish preservation, and created the Arizona Game and Fish Commission. By Section 46 of this act, the previous provisions specifically providing for the recovery of damages in a civil action were omitted. This section provided that "unless a different or other penalty or punishment is herein specifically prescribed, a person who violates any provision of this act, * * * is guilty of a misdemeanor, and in addition thereto, is liable to an additional penalty of twenty-five dollars for each animal, bird, or fish, or part thereof, * * * taken, possessed, or transported, in violation of this act." This section set up a specific penalty for unlawfully possessing deer meat. The offense was designated as a felony and was punishable by a fine of not less than $200 nor more than $1,000, or by imprisonment in the county jail for not less than six months nor more than one year or by both, and in addition thereto, the offender was liable to an additional penalty of $50 for each animal or part thereof possessed in violation of the act. In view of the maximum penalty of $1,000, original jurisdiction of the criminal offense was exclusively vested in the superior court. By Section 7 of Chapter 97, Laws 1931, said section 46 was amended by reducing the fine to a minimum of $100 and a maximum of $300 as it now appears in Section 57-126, supra. The pecuniary

penalty of $50 was not altered in any way. Having presented the foregoing history of the sections under consideration, appellants say:

"It is evident that in drafting Chapter 84, Laws of 1929, the legislature intended to combine both the penal and the remedial provisions of the prior laws into one statute. Such is a reasonable construction of Section 57-126, supra, as amended, in view of the legislative history on the subject of fines· and penalties for violations of the Arizona fish and game laws."

Appellants also suggest that the statute is ambiguous and that as an aid to its construction we should consider its antecedents, citing Section 5201, Sutherland's Statutory Construction, and Home Owners' Loan Corporation v. Phoenix, 51 Ariz. 455, 77 P.2d 818. The rule as stated by Mr. Sutherland is that

"The intent of the legislature when a statute is found to be ambiguous may be gathered from statutes relating to the same subject matter—statutes in pari materia. On the presumption that whenever the legislature enacts a provision it has in mind the previous statutes relating to the same subject matter, it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they all should be construed together. * * *"

The section under consideration is not free from ambiguity as we shall endeavor to point out. The statute provides that he who transgresses the statute is guilty of a criminal offense, a misdemeanor, and shall be punished by a fine of not less than $100 nor more than $300 and "In addition thereto, is liable to an additional penalty of fifty dollars for each animal or part thereof, * * * possessed, * * * in violation of this act." Clearly the penal punishment is by a fine with definite limitations. The provision that the defendant "is liable to an additional penalty" would at first blush seem to indicate that the legislature was using the words "fine" and "penalty" as synonyms. In the reported cases it is possible to find many decisions wherein the words have been considered synonymously. See Vol. 31, Words and Phrases, Perm.Ed., page 602. Likewise there are many reported cases wherein a fine is distinguished from a penalty. Vol. 31, Words and Phrases, Perm.Ed., page 599.· The statute is very definite and specific insofar as it says that the fine shall not be more than $300. If the provision providing for an additional penalty (liability) had been set up in the statute in a separate section, it would have been easier to discern that the legislature definitely intended a fine in one section and as definitely intended an additional pecuniary punishment by way of a penalty in the other section. We do not think that the word "penalty" as used in this section is synonymous with the word "fine." The justice of the peace is given authority to assess the fine. The section does not authorize him to assess or levy or

collect any additional penalty; the section merely states that the person guilty of violating the act is liable to an additional penalty.

" 'Penalty' and 'fine' are not the same in law. A penalty is always recoverable in a civil action. A fine never is. A penalty, when recovered, goes to the party suing; a fine, to the people. A fine is defined in law to be a pecuniary punishment imposed by a lawful tribunal upon a person convicted of a crime or misdemeanor. This definition is wholly inapplicable to a judgment in a civil suit. So that a proceeding for the violation of a city ordinance, where the punishment is fine or imprisonment, is criminal in character." 31 Words and Phrases Perm.Ed., page 600, citing City of Hudson v. Granger, 23 Misc. 401, 52 N.Y.S. 9, 10.

This question suggests itself: If the defendant is liable for an additional penalty of $50 (or perhaps multiples thereof), to whom is he liable? He could be liable only to the one to whom he owes a duty or an obligation. In this case it must be the State of Arizona. That this is so appears from the decision of this court in the case of Begay v. Sawtelle, 53 Ariz. 304, 305, 88 P.2d 999, 1000 where it is said:

"Under the common law, the title to game animals and fish was held to be in the state for the use and benefit of its citizens, and the killing or taking and use of such game was subject to governmental control and regulation in the interest of the common good. These principles passed to America with the rest of the common law of England and, except as changed by statute or contrary to our customs or conditions, are the law of Arizona. * * *."

It is regrettable that the details as to the procedure to be followed to collect the penalty are nonexistent. We are not here concerned with the fact that the language of the act contains no express provision for the collection of the penalty in a civil action. No such action has been filed and no issue is before us on that point.

In concluding that the penalty imposed by the section does not exceed the jurisdiction of the justice court, we believe that the reasoning in the cases hereinafter referred to is applicable and persuasive. In the case of Kausch v. Moore, D.C.Mo., 268 F. 668, plaintiff filed a bill in equity to enjoin defendant as collector of internal revenue from seizing and selling his property under restraint for taxes and penalty alleged to have been incurred by plaintiff pursuant to certain provisions of the Volstead Act. The commissioner of internal revenue charged that plaintiff had violated the provisions of the National Prohibition Act and ordered the collector to make the restraint. The act provided that for the illegal manufacture or sale of liquor a tax should be assessed in double the amount regularly due (in the absence of violation of the act) "With an additional penalty of $500 * * *." 41 Stat. 305, § 35. The penal provision of the act was that a violator

could not be fined more than $1,000. The court in considering whether the authority to levy a double tax and an additional penalty of $500 was in excess of the strict maximum fine said:

"* * * The imposition of the double tax and of the penalty provided by section 35, supra, are therefore in the nature of additional punishments for the same offense. In short, there exist under this act a fine, a double tax, and a penalty, as punishments for one and the same offense. These considerations regarded, the word 'penalty,' as used in the act, would seem to have been used by Congress in the usual and ordinary legal meaning of this word, which meaning is fairly well-settled law. A penalty is a sum of money, which the law exacts by way of punishment, for the doing of some act, which the law forbids, or for the failure to do some act, which the law requires to be done. It is true, as the definition foreshadows, that sometimes the word 'penalty' is undoubtedly used as a synonym of the word 'fine'; but as used in the Volstead Act it cannot fairly be so construed, because by another provision of the act a fine as such is clearly provided for * * *."

In the case of State v. Price, 124 La. 917, 50 So. 794, 795, 34 Am.St.Rep. 523, 18 Ann. Cas. 881, defendants were convinced on unlawfully selling liquor, fined $300, and permanently deprived of their license to conduct a barroom. Defendants appealed the conviction. The state moved to dismiss the appeal upon the ground that the court did not have jurisdiction except in those cases where the fine actually imposed exceeded $300. The penalty provided in the statute that was alleged to have been violated by way of a fine in a sum of not less than $50 nor more than $500. An additional section of the act provided that any person violating the act "shall in addition to the punishment prescribed by section 6 of this act be permanently deprived thereafter of the privilege of conducting a barroom, * * *." Laws 1908, No. 176, p. 236, § 7. To give the court jurisdiction, the fine actually imposed had to exceed $300. Appellants contended that their license was very valuable and that the fine together with the value of the license exceeded the sum of $300 and therefore gave the supreme court jurisdiction. In considering this contention the court said:

"* * * In like manner the forfeiture in question is no part of the fine, since the word 'fine' in its ordinary acceptation has the distinct meaning of a pecuniary penalty. 19 Cyc. 544; 13 A. & E. E. 53. It has that restricted meaning as here used in the Constitution. Otherwise, it would be synonymous with 'penalty' or 'punishment'; and the situation would be that the jurisdiction of this court, instead of being sharply delimited, as is done by the use of the word 'fine' in its ordinary meaning of a pecuniary penalty, would depend upon what was the money value of the penalty. In the case at bar, for instance, the right of the defendants to keep a barroom being of greater

value than $300, this court would have jurisdiction even though no fine at all had been imposed. In certain connections the word 'fine' has been held to be synonymous with 'penalty' (State v. McConnell, 70 N. H. 158, 46 A. 458; Hanscomb v. Russell, 77 Mass. 373), but by decisions too numerous to need to be specially referred to it has been confined to its ordinary meaning; and we think it must be so confined in this case. The framers of the Constitution weighed well their words in prescribing the limits of the jurisdiction of this court. It cannot be supposed that they would have used the restrictive word 'fine' if they had meant to express the idea conveyed by the broad word 'penalty,' or by the still broader word 'punishment.' "

In our statute it cannot be presumed that the legislature did not use the restrictive word "fine" in its limited sense. They specifically provided that the fine could not be more than $300. That the legislature envisioned this very situation is demonstrated by the action it took in amending the law in 1931 as above pointed out. By the 1929 act the penalty was a fine of "not less than two hundred dollars nor more than one thousand dollars." Under the 1929 act jurisdiction was clearly in the superior court. When the legislature amended the statute reducing the fine to a maximum of $300, the penalty then provided coincided with the maximum punishment by fine assessable in a justice court. By this amendment the offense was reduced from a felony

to a misdemeanor and the pecuniary punishment that could be inflicted was reduced from $1,000 to $300. It is reasonable to presume that the legislature by this amendment intended to make the offense cognizable in the justice court and to give it jurisdiction. Otherwise the reducing of the maximum penalty from $1,000 to $300 can be explained only on the basis of chance.

Appellee has suggested that this court does not have jurisdiction to entertain this appeal for the reason that appellants and neither of them have a right to appeal, citing Section 21-1701, A.C.A.1939, and McCloskey, Justice of the Peace, v. Renfro, 47 Ariz. 534, 57 P.2d 1140. In this McCloskey case, a superior court granted certiorari quashing a defective judgment of the justice of the peace in a civil case involving the interests of individual litigants. The justice of the peace attempted to appeal from the judgment. This court held that the justice court and the justice of the peace were not aggrieved parties within the meaning of the statute and could not perfect an appeal in this court. This case is not in point, for in the instant case the order appealed from was a writ of prohibition directed to the *court and to the justice of the peace*. The justice court is subject to prohibition only in cases where under the statute prohibition will properly lie. The applicable principle of law is aptly set forth in Simpson v. Police Court of City of Riverside (Cal.), 160 Cal. 530, 117 P. 553, 556, where it is said:

"* * * It cannot, of course, be denied that the police court has the right of appeal from an adverse judgment in prohibition. The Constitution secures it in that right by the same clause that secures the right to one who invokes the remedy to protect him against judicial usurpation— the right pertains to the remedy, and is not secured to one party to the exclusion of the other.* * *."

The judgment is reversed and the superior court is directed to make and enter an order quashing the peremptory writ of prohibition.

STANFORD, C. J., and MORGAN J., concur.